> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED: 5/25/2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

UNITED STATES OF AMERICA,　　　　　　　　:　　ECF Case

　　　　　Plaintiff,　　　　　　　　　　　　　:

　　-　v -　　　　　　　　　　　　　　　　　:　　**CONSENT DECREE**

475 NINTH AVENUE ASSOCIATES LLC, and H.　:　　12 Civ. **4174**
THOMAS O'HARA ARCHITECTS;　　　　　　　:

　　　　　Defendants; and　　　　　　　　　　:

THE DERMOT COMPANY and EQR-HUDSON　　:
CROSSING, LLC;　　　　　　　　　　　　　:

　　　　　Relief Defendants.　　　　　　　　　:

------------------------------------------------------------------------ x

## INTRODUCTION

**A.　Background**

This Consent Decree is entered into between the United States of America (the "United States") and defendants 475 Ninth Avenue Associates LLC and H. Thomas O'Hara Architects and relief defendants the Dermot Company and EQR-Hudson Crossing, LLC;

WHEREAS, the United States brought this action (the "Action") to enforce provisions of the Fair Housing Act ("FHA"), codified at 42 U.S.C. §§ 3601–3619. Specifically, the United States' complaint in this Action, filed on May _25_, 2012, alleges that 475 Ninth Avenue Associates LLC and H. Thomas O'Hara Architects have engaged in a pattern or practice of discrimination, and have denied rights to a group of persons in a manner raising an issue of general public importance, including by failing to design and/or construct Hudson Crossing, a residential apartment complex in New York, New York ("Hudson Crossing"), with the features

of accessible and adaptive design and construction required by the FHA, 42 U.S.C. § 3604(f)(3)(C);

WHEREAS, Hudson Crossing is subject to the accessible design and construction requirements of the FHA, 42 U.S.C. § 3604(f)(3)(c);

**B.    The Defendants**

WHEREAS, defendant 475 Ninth Avenue Associates LLC (the "Developer Defendant"), a Delaware limited liability company, was, at all relevant times, the developer of Hudson Crossing and, in that capacity, designed and constructed Hudson Crossing, but ceased conducting business in or about December 2007;

WHEREAS, defendant H. Thomas O'Hara Architects, a New York architectural firm that is in Chapter 7 bankruptcy proceeding (the "Architect Defendant"), through H. Thomas O'Hara (the "Individual Architect"), prepared the architectural plans for Hudson Crossing and, in that capacity, designed the complex;

WHEREAS, the Dermot Company ("Dermot," and, together with the Developer Defendant and the Architect Defendant, the "Design Defendants"), a Delaware corporation that is affiliated with a member of the Developer Defendant, has agreed to assume the injunctive and financial obligations of the Developer Defendant under this Consent Decree as a relief defendant;

WHEREAS, the Developer Defendant and Dermot hereby represent that (a) the Developer Defendant has not, directly or indirectly, developed, designed or constructed any other residential building with four or more dwelling units, and one or more elevators, designed and constructed for first occupancy after March 13, 1991 ("Covered Multifamily Dwelling"); (b) none of the members of the Developer Defendant has, directly or indirectly, developed, designed

2

or constructed any other Covered Multifamily Dwelling; and (c) none of the individual members

of the members of the Developer Defendant owns a majority interest, direct or indirect, in any

Covered Multifamily Dwelling;

WHEREAS, relief defendant EQR-Hudson Crossing, LLC, a Delaware limited liability

company, (the "Current Owner," and, together with the Design Defendants, the "Defendants"), is

the current owner of Hudson Crossing, and is a necessary party for the purpose of effectuating

complete relief;

**C.     Relevant Requirements of the Fair Housing Act**

WHEREAS, the FHA provides that Covered Multifamily Dwellings must include certain

basic features of accessible and adaptive design to make such units accessible to or adaptable for

use by a person who has or develops a disability, 42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(A);

WHEREAS, the accessible and adaptive design provisions of the FHA require that for

Covered Multifamily Dwellings: (i) the public use and common use portions of such dwellings

are readily accessible to and usable by persons with a disability; (ii) all the doors designed to

allow passage into and within all premises within such dwellings are sufficiently wide to allow

passage by persons with a disability using wheelchairs; (iii) all premises within such dwellings

contain the following features of adaptive design: (I) an accessible route into and through the

dwelling; (II) light switches, electrical outlets, thermostats, and other environmental controls in

accessible locations; (III) reinforcements in bathroom walls to allow later installation of grab

bars; and (IV)  usable kitchens and bathrooms such that an individual using a wheelchair can

maneuver about the space. 42 U.S.C. § 3604(f)(3)(C) (these provisions and features are referred

to herein as the "Accessible Design Requirements");

**D.     Conditions at Hudson Crossing**

WHEREAS, Hudson Crossing is a residential apartment building located at 400 West 37th Street in New York, New York.  The complex consists of a tower with elevator access, and contains 259 dwelling units, as well as public and common use areas, including a fitness center, a patio with balcony, and covered parking;

WHEREAS, the United States inspected Hudson Crossing in July 2009, and specifically identified, among other things, the following conditions at Hudson Crossing, which the United States alleges are failures to meet the Accessible Design Requirements:

- Bedrooms, bathroom, terrace, and closet doorways within some apartments too narrow for use by persons with wheelchairs;

- Terraces within the apartments inaccessible to persons in wheelchairs;

- Excessively high thresholds within some apartments and in common areas, which interfere with accessible routes for persons in wheelchairs;

- Kitchen hallways in some apartments too narrow to accommodate persons in wheelchairs;

- Kitchen electrical outlets inaccessible to persons in wheelchairs;

- Kitchens in some apartments lacking sufficient space between appliances and/or countertops, so as to be usable by persons in wheelchairs;

- Kitchen ranges not usable by persons in wheelchairs;

- Insufficient clear floor space within some bathrooms for maneuvering by persons in wheelchairs at lavatories and toilets;

- Bathroom fixtures precluding installation of bathroom grab bars;

- Common area doors requiring excessive force for persons with certain disabilities;

- Common area doors with hardware unusable by persons with certain disabilities;

- Common area bathrooms not usable by persons in wheelchairs;

4

- Leasing office inaccessible to the visually impaired and persons in wheelchairs;

- Certain mailboxes inaccessible to persons in wheelchairs;

- Elevators that close too quickly for persons in wheelchairs;

- Trash rooms with insufficient clearance for persons in wheelchairs;

- Common areas lacking sufficient signs for the visually impaired;

- Certain features in the fitness room inaccessible to persons in wheelchairs; and

- Certain features in the laundry room inaccessible to persons in wheelchairs.

**E.      Consent of the Parties to Entry of this Decree**

WHEREAS, the parties agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3614(a).  The parties further agree that this controversy should be resolved without further proceedings and without an evidentiary hearing or a trial;

WHEREAS, Dermot and the Current Owner agree to make modifications to Hudson Crossing, as set forth herein;

WHEREAS, the parties' entry into this Consent Decree is not intended to limit or preclude (i) any of the Design Defendants, individually or collectively, from instituting a separate action seeking contribution, or damages in the nature of indemnification or breach of contract or for any related reason, from any other party that was involved in the design and construction of Hudson Crossing or provided insurance to any party so involved, or (ii) any of the Defendants from asserting, in any action or proceeding relating to Hudson Crossing, any available rights, remedies or defenses; and

WHEREAS, the parties agree to the entry of this Consent Decree.

5

**It is hereby ORDERED, ADJUDGED, and DECREED:**

## I. GENERAL INJUNCTION

1.      The Design Defendants and each of their officers, employees, agents, successors, and assigns, and all other persons in active concert or participation with them, are enjoined from discriminating on the basis of disability as prohibited by the Fair Housing Act, 42 U.S.C. § 3604.

## II. CORRECTIVE ACTIONS / RETROFITS

2.      The United States alleges that Hudson Crossing was not designed or constructed in accordance with the FHA or the Fair Housing Accessibility Guidelines, Design Guidelines for Accessible/Adaptable Dwellings, 56 Fed. Reg. 9472 (Mar. 6, 1991) (the "Guidelines"). To address the conditions alleged to be violations of the FHA, Dermot agrees to correct the deficiencies as described in Appendices A and B.

3.      The Current Owner did not design or construct Hudson Crossing, but are necessary parties for the relief set forth in this section. The Current Owner agrees to permit the Design Defendants to correct the deficiencies as set forth herein.

**A.      Modifications to the Public and Common Use Areas**

4.      The Design Defendants acknowledge that certain features in the public and common use areas of Hudson Crossing do not meet the requirements of the Guidelines. Dermot agrees to modify the public and common use areas of Hudson Crossing so that they are in compliance with the FHA and the Guidelines by taking the actions described below, and the Current Owner agrees to allow Dermot to take such corrective actions at Hudson Crossing.

5.      As soon as reasonably possible, but no later than six (6) months after the entry of this Consent Decree, Dermot shall, with the cooperation of the Current Owner, finish the retrofits

6

listed in Appendix A. In making such retrofits, Dermot and the Current Owner shall make reasonable efforts to minimize inconvenience to residents.

6.     Within ten (10) business days after the entry of this Consent Decree, the Current Owner shall provide written notices to all residents at Hudson Crossing stating that the retrofits required by this Consent Decree will be performed to the public and common use areas of Hudson Crossing. Such notice shall conform to Appendix C.

7.     The Current Owner shall certify to the United States in writing that the notices required by paragraph 6 have been distributed and shall specify the manner in which they were distributed, no later than ten (10) business days after such distribution. Such certification shall include the names and addresses of the persons to whom the notices were distributed.

**B.     Modifications to Dwelling Unit Interiors**

8.     The Design Defendants acknowledge that certain features in the dwelling unit interiors of Hudson Crossing do not meet the requirements of the Guidelines. To address these violations, Dermot agrees to take the corrective actions necessary to bring Hudson Crossing into compliance with the FHA and the Guidelines by taking the actions described below, and the Current Owner agrees to allow Dermot to take such corrective actions at Hudson Crossing.

9.     As soon as reasonably possible, but no later than the earlier of (a) vacancy of the unit in which retrofits must be made, or (b) six (6) months after the entry of this Consent Decree, Dermot, with cooperation of the Current Owner, shall cause the retrofits listed in Appendix B to be completed, except that those retrofits listed on Appendix B that are to be performed "on request" shall be completed no later than forty-five (45) days after request by the tenant or a prospective tenant. In making such retrofits, Dermot and the Current Owner shall make reasonable efforts to minimize inconvenience to residents.

10.     Within ten (10) business days after the date of the entry of this Consent Decree, the Current Owner shall inform each resident at Hudson Crossing that: (1) the United States has alleged that certain features of the tenant's unit do not meet the accessible and adaptive design requirements of the FHA; (2) to settle this lawsuit, Dermot and the Current Owner have agreed to cause retrofits of certain features of Hudson Crossing to be completed to make them more accessible; and (3) the scheduling of the retrofits will take into account the preferences and convenience of the resident or future resident and that relocation costs, if any, will be provided in advance.  The notice shall be substantially in the form of Appendices D-1 and D-2.

11.     The Current Owner shall certify to the United States in writing that the notices described in paragraph 10 have been distributed and shall specify the manner in which they were distributed, within ten (10) business days after such distribution.  Such certification shall include the names and addresses of the persons to whom the notices were distributed.

12.     In the event that a resident of a unit within Hudson Crossing scheduled to undergo a modification is dislocated from his or her unit for more than twelve (12) consecutive hours, Dermot shall pay to such resident, *pro rata*, the applicable federal government per diem rate for food and lodging for the local area (as available at www.gsa.gov – click on "per diem rates" under travel) for each day or half-day that the resident is dislocated for more than twelve (12) consecutive hours.  Such payment shall be made prior to the commencement of any retrofit work on the tenant's unit, so that the tenant can use the money to obtain alternative living accommodations while dislocated.

13.     Present and/or future residents may not be charged any additional rent, deposit, fee, or other consideration for the units in which retrofits are or may be implemented because of completed, contemplated, or possible retrofits.  The Current Owner shall take no adverse action

against any present and/or future tenant because such person requests to have his or her apartment, or prospective apartment, modified in accordance with this Consent Decree.

## C.   Enhanced Retrofits

14.   Within 3 years from the date of the entry of this Consent Decree, Dermot, with the cooperation of the Current Owner, shall complete retrofits to three (3) units at Hudson Crossing, to be identified in advance to the United States, whose consent shall not be unreasonably withheld, so that the three (3) units include all of the following features:

(a)   Ovens and ranges with controls located on the front or side of the range, rather than the rear of the range;

(b)   Lever door hardware on passage doors throughout the unit;

(c)   Lever controls on faucets and sinks throughout the unit;

(d)   Wand shower head on flexible tube, or shower head on height adjustable rod;

(e)   Anti-scald valves in showers;

(f)   Replacement of electric flip switches with rocker switches operable with a push;

(g)   Strobe light fire and carbon monoxide alarms;

(h)   Electric thermostats with large numbers and push buttons to adjust, and remote thermostat controls;

(i)   Installation of visual door bell indicator;

(j)   Additional fish-eye or wide view peepholes at 48 inches from floor;

(k)   Installation of full height mirrors in bathrooms;

(l)   Smooth kick plates on push side of the entry door so that wheelchair users may use footrests to open unit doors without damaging the door surface; and

(m)   Full extension drawer slides in kitchen and bath cabinets to allow use of all of the drawer space.

## IV.  NEUTRAL INSPECTOR

15.     Dermot and the Current Owner shall enter into a contract with a neutral inspector(s) approved by the United States ("Inspector(s)") to conduct on-site inspections of all retrofits performed under this Consent Decree to determine whether modifications have been made in compliance with the specifications in Appendices A and B at Hudson Crossing.  The Inspector(s) shall have expertise in the design and construction requirements of the FHA.

16.     The Inspector(s) may, upon request of Dermot or the Current Owner, review and comment upon the sufficiency of all proposed modifications in writing in advance of any repair by such Dermot, but such review and comment shall be completed no later than fourteen (14) days after the request.

17.     An initial inspection of Hudson Crossing shall take place within thirty (30) days after the completion of all of the retrofits set forth in Appendices A and B (other than the retrofits to be made "on request"), or as soon thereafter as practicable.

18.     For each inspection, Dermot and the Current Owner shall give the United States at least three (3) weeks prior notice of the inspection, and shall give the United States an opportunity to have its representative present for the inspection.

19.     The Inspector(s) shall set out in writing the results of his or her inspection, including any deficits, and shall send that report to Dermot, the Current Owner, and the United

States.[1]  The report shall state whether the retrofits required by the applicable Appendix have been completed, and shall list any required retrofits that were not completed.

20.     If the inspection indicates that not all of the required retrofits have been made as specified in the applicable Appendices, Dermot, with the cooperation of the Current Owner, shall correct any deficiencies within 60 days and shall pay for another inspection by the same Inspector(s) to certify that the deficiencies have been corrected.  This process shall continue until the Inspector(s) certifies that all of the necessary modifications have been made.  Dermot shall pay all of the Inspector(s)'s reasonable costs associated with these inspections, and such payments shall be made without regard to the Inspector(s)'s findings.  Upon reasonable notice, representatives of the United States shall be permitted to inspect the modifications and/or the third-party inspection reports provided for in this Consent Decree, to ensure compliance.

## V. TRANSFER OF INTEREST IN PROPERTIES

21.     The sale or transfer of ownership, in whole or in part, of any Defendant's interest(s) in Hudson Crossing shall not affect any Defendant's continuing obligation to retrofit, and/or conduct or allow inspections or surveys of, Hudson Crossing, as specified in this Consent Decree, unless that Defendant has obtained in writing, as a condition of sale or transfer, the purchaser or transferee's commitment to assume such obligations, so that the purchaser or transferee will be bound by the terms of this Consent Decree to make retrofits and allow or conduct inspections or surveys as set forth in this Consent Decree, and will be subject to the jurisdiction of this Court.

---

[1]     For purposes of this Consent Decree, notices provided to the United States shall be addressed to Chief, Civil Rights Unit, Office of the United States Attorney for the Southern District of New York, 86 Chambers Street, Third Floor, New York, New York 10007.

22.     Should an owner of Hudson Crossing decide to sell or transfer any ownership of Hudson Crossing, in whole or in part, or any portion thereof, prior to the completion of the retrofits specified in this Consent Decree's Appendices describing the retrofits for Hudson Crossing, such owner will, at least thirty (30) days prior to completion of the sale or transfer: (a) provide each prospective buyer with a copy of this Consent Decree and written notice that the property is subject to this Consent Decree, including specifically Design Defendants' obligations to either (i) complete required retrofit work and allow inspections, or (ii) assign such obligations to the purchaser or transferee by obtaining the purchaser or transferee's commitment to be bound by this Order, subject to the jurisdiction of this Court; and (b) provide to the United States, by facsimile and first-class mail, written notice of the owner's intent to sell or transfer ownership, along with a copy of the notice sent to each buyer, and each buyer's name, address and telephone number.

## VI.  NON-DISCRIMINATION IN OTHER DESIGN AND CONSTRUCTION

23.     For the duration of this Consent Decree, the Design Defendants shall maintain, and provide to the United States upon request, the following information and statements regarding any Covered Multifamily Dwellings purchased, developed, built, designed, and/or engineered in whole or in part, by such Defendant or by any entities in which such Defendant has a position of control as an officer, director, member, or manager, or has a ten-percent (10%) or larger ownership share:

- the name and address of the project;

- a description of the project and the individual residential units;

- the name, address, and telephone number of the civil engineer(s) involved with the project, to the extent the information is available;

- a statement from a civil engineer acknowledging and describing his/her knowledge of and training in the requirements of the FHA and in the field of accessible site design, certifying that he/she has reviewed the engineering documents for the project and that the design specifications therein fully comply with the requirements of the FHA and the Guidelines;

- the name, address and telephone number of the architect(s) who are employed or retained by any Defendant and are involved with the project;

- a statement from all architect(s) who are employed or retained by any Defendant and are involved with the project, acknowledging and describing his/her knowledge of and training in the requirements of the FHA and the Guidelines, and in the field of accessible site design, certifying that he/she has reviewed the architectural plans for the project and that the design specifications therein fully comply with the requirements of the FHA and the Guidelines.

24.     If the engineering documents or architectural plans referred to in paragraph 23 are revised, and the revisions could have any impact on whether the dwellings or complex complies with the FHA and the Guidelines, the associated Design Defendant shall obtain, maintain, and provide to the United States upon request, a statement from the site engineer(s) or architect(s) who are employed or retained by any such Defendant and are involved with the project, as applicable, that all specifications in the revised engineering documents or architectural plans, as pertinent, comply with the requirements of the FHA and the Guidelines.

25.     For the term of this Consent Decree, if the Architect Defendant prepares any architectural or site plans, drawing, or blueprints for Covered Multifamily Dwellings, as defined in the FHA, it shall include on such plans, drawing, or blueprints a statement attesting to

compliance with the FHA and the Guidelines, and shall maintain and provide such plans, drawing, or blueprints to the United States upon request.

26.     Dermot shall design and construct all new Covered Multifamily Dwellings in full compliance with the Accessible Design Requirements, the FHA Guidelines, the Americans with Disabilities Act, and the Americans with Disabilities Act Accessibility Standards. During the term of this Consent Decree, upon reasonable notice, the United States will be permitted full access to such properties to inspect for compliance with such standards, rules, and laws.

## VII.  PAYMENTS TO AGGRIEVED PERSONS

27.     Within thirty (30) days after entry of this Consent Decree, Dermot shall deposit in an interest-bearing account the aggregate sum of ONE HUNDRED AND FIFTEEN THOUSAND DOLLARS ($115,000) for the purpose of compensating any aggrieved persons who may have suffered as a result of the Design Defendants' discriminatory housing practices regarding Hudson Crossing. This deposited money, plus any accrued interest, shall be referred to as the "Settlement Fund."

28.     Within fifteen (15) days after the entry of this Consent Decree, Dermot shall publish the Notice to Persons Who May Have Suffered Housing Discrimination ("Aggrieved Person Notice") at Appendix E informing readers of the availability of compensatory funds. The Aggrieved Person Notice shall be no smaller than three columns by six inches and shall be published on three occasions in each of the following newspapers: the *Wall Street Journal* and the *New York Times*. The three publication dates shall be separated from one another by twenty-one (21) days, and at least two of the publication dates shall be on a Sunday for the *New York Times* and the weekend edition for the *Wall Street Journal*. Within ten (10) days after the

last publication date, Dermot shall provide the relevant section of the newspapers containing the Aggrieved Person Notice to the United States.

29.    Within fifteen (15) days after entry of this Consent Decree, and for a period of one year thereafter, the Current Owner shall place on http://www.equityapartments.com/new-york/new-york-city-apartments/midtown-west/hudson-crossing-apartments.aspx a link to an electronic version of the Aggrieved Person Notice in an Adobe Acrobat Portable Document Format ("PDF").  The link should state "Notice to Persons Who May Have Suffered Housing Discrimination," and should appear on the upper half of the website, in a conspicuous font style and color, in a font size no smaller than the font size for any of the terms "Floor Plans & Pricing," "Property Features," "Map & Directions," "Photo Gallery," and "Reviews" as they appeared as on April 30, 2012.

30.    Within fifteen (15) days after the entry of this Consent Decree, Dermot shall send a copy of the Aggrieved Person Notice to each of the following organizations:

Brooklyn Center for Independence of the Disabled
27 Smith Street, Suite 200
Brooklyn, New York  11201;

Bronx Independent Living Services
4419 Third Avenue, Suite 2C
Bronx, New York  10457;

Center for Independence of the Disabled, NY
841 Broadway, #301
New York, New York  10003;

Disability Law Center at New York Lawyers for the Public Interest
151 W. 30th Street, 11th Floor
New York, New York  10001;

Disability Rights Advocates
1560 Broadway, 10th Floor
New York, New York  10036;

Fair Housing Justice Center
5 Hanover Square, 17th Floor
New York, New York 10004; Harlem Independent Living Center
289 St. Nicholas Avenue, Suite 21, Lower Level
New York, New York  10027;

The Legal Aid Society of New York
199 Water Street
New York, New York  10038;

Legal Services NYC
350 Broadway, Sixth Floor
New York, New York  10016;

MFY Legal Services, Inc.
299 Broadway
New York, New York  10007; and

United Spinal Association
75-20 Astoria Blvd.
Jackson Heights, New York  11370.

31.     Within thirty (30) days after the entry of this Consent Decree, Dermot, with

cooperation of the Current Owner, shall send, by first-class mail, postage pre-paid, a copy of the

Aggrieved Person Notice to each past or present resident at Hudson Crossing.  For past residents,

Dermot will be deemed to have complied with the requirements of this paragraph by mailing

such notice to the forwarding address provided by the former resident at the time the former

resident moved out of Hudson Crossing.  Within sixty (60) days after entry of this Consent

Decree, Dermot shall certify to the United States that the Aggrieved Person Notices have been

sent.

32.     The United States may make its own efforts to locate and provide notice to

potential aggrieved persons at Hudson Crossing.

33.     Dermot and the Current Owner shall permit the United States, upon reasonable

notice, to review any non-privileged records that may reasonably facilitate its investigations to

locate allegedly aggrieved persons and make determinations regarding their potential claims. In addition, Dermot and the Current Owner shall identify to the United States any allegedly aggrieved persons or any past, present, or prospective tenants of Hudson Crossing who have household members with disabilities or regular guests with disabilities, to the extent that Dermot, the Current Owner, or their employees or agents, possess the information required to make such identifications.

34.     The United States shall investigate the claims of allegedly aggrieved persons and shall determine which persons are aggrieved and an appropriate amount of damages that should be paid to each such person. The United States will inform Dermot in writing of each of its determinations, together with a copy of a sworn declaration from each aggrieved person setting forth the factual basis of the claim.

35.     If Dermot disputes the amount of or entitlement to a payment to an aggrieved person, Dermot shall, within fifteen (15) days after receiving notice of a determination (a "Determination") from the United States, provide a written objection to the United States, along with any information or documents that it believes may refute the aggrieved person's claim. The parties may agree to extend Dermot's time to object to any Determination for good cause shown. The United States shall give due consideration to any objections it receives from Dermot and shall submit, following any objection, its reconsidered determination (a "Reconsidered Determination") to Dermot, in writing, setting forth the aggrieved person and the amount that the aggrieved person shall be paid. If Dermot disputes the Reconsidered Determination, it may file an objection with the Court, which may sustain or overrule the objection.

36.     Dermot shall, within thirty (30) days after receiving a Determination to which no objection has been made, fifteen (15) days after receiving a Reconsidered Determination to

which no objection has been filed with the Court, or fifteen (15) days after any decision by the Court overruling a filed objection, whichever is earliest, deliver to the United States checks payable to aggrieved persons in the amounts identified by the United States (or as directed by the Court, as applicable). In no event shall the aggregate of all such checks exceed the amount of the Settlement Fund, including accrued interest. No aggrieved person shall be paid until he/she has executed and delivered to the United States, with a copy to Dermot, the release at Appendix G.

37.     No adverse action shall be taken against any person because such person cooperates with the United States in its investigations, makes a claim, or seeks to make a claim under, Section VII of this Consent Decree.

38.     In the event that less than the total amount in the Settlement Fund including accrued interest is distributed to aggrieved persons, then, no later than the earlier of (a) when the United States determines that no further aggrieved persons will be identified, or (b) the expiration of this Consent Decree, the remainder shall be distributed to a qualified organization(s) mutually agreed upon by the United States and Dermot, subject to the approval of the Court, for the purpose of conducting fair housing enforcement-related activities in New York City.

## VIII.  CIVIL PENALTY

39.     Within thirty (30) days after the date of the entry of this Consent Decree, Dermot shall pay a civil penalty of TWENTY THOUSAND DOLLARS ($20,000) in total pursuant to 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest. Said sum shall be paid by submitting a check made payable to the "United States of America Department of the Treasury" to the United States.

## IX. EDUCATIONAL PROGRAMS

40.     Within thirty (30) days after the entry of this Consent Decree, each Design Defendant shall provide a copy of this Consent Decree to all of its agents and employees involved in the design or construction of Hudson Crossing and secure the signed statement from each such agent or employee acknowledging that he or she has received the Consent Decree, and has had an opportunity to read the Consent Decree and to have questions about the Consent Decree answered.  This statement shall be substantially similar to the form of Appendix F.

41.     During the term of this Consent Decree, any new agent or employee of a Design Defendant who will have any supervisory authority over the design or construction of any Covered Multifamily Dwelling shall, no later than thirty (30) days after the date he or she commences such agency or employment relationship with that Design Defendant, be given a copy of this Consent Decree by such Design Defendant, and such Design Defendant shall require each such new agent or employee to sign a statement acknowledging that he or she has received the Consent Decree, and has had an opportunity to read the Consent Decree and to have questions about the Consent Decree answered.  This statement shall be substantially similar to the form of Appendix F.

42.     Within 30 days of the entry of this Consent Decree, the Current Owner shall provide a copy of this Consent Decree to all its agents and employees involved in rental of units at Hudson Crossing and/or the provision of services to residents at Hudson Crossing, and shall secure the signed statement from each such agent or employee acknowledging that he or she has received and read the Consent Decree, and has had an opportunity to have questions about the Consent Decree answered.  This statement shall be substantially similar to the form of Appendix F.

43.    During the term of this Consent Decree any new agent or supervisor of an Owner

Defendant who will be involved in the renting of units at Hudson Crossing, and/or the provision

of services to residents at Hudson Crossing shall, within 30 days after the date he or she

commences an agency or employment relationship with the Current Owner, be given a copy of

this Consent Decree by such Defendant, and such Defendant shall require each such new agent

or employee to sign a statement, acknowledging that he or she has received and read the Consent

Decree, and has had an opportunity to have questions about the Consent Decree answered.  This

statement shall be substantially similar to the form of Appendix F.

44.    In lieu of providing individuals or entities with copies of the Consent Decree as

required by the preceding paragraphs of Part IX, a Defendant may, with the United States'

advance written approval of the form and content of any proposed summary, instead provide a

summary of the Consent Decree designed to provide personnel with information relevant to their

positions.   Copies of the Consent Decree (or approved summary) may be provided electronically

or by a link to a website where a copy of the Consent Decree (or approved summary) may be

found.

45.    The Design Defendants shall also ensure that they and their employees and agents

who have any supervisory authority over the design and/or construction of any Covered

Multifamily Dwelling have access to a copy of, are familiar with, and have had the opportunity

to review, the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991), and the United

States Department of Housing and Urban Development, Fair Housing Act Design Manual, A

Manual to Assist Builders in Meeting the Accessibility Requirements of the Fair Housing Act

(August 1996, Rev. April 1998).

46.    Within ninety (90) days after the date of entry of this Consent Decree, the Design

Defendants and all employees and agents whose duties, in whole or in part, involve or will involve supervision over the development, design and/or construction of Covered Multifamily Dwellings of the type at issue in this case shall undergo training on the design and construction requirements of the FHA. The training shall be conducted by a qualified third-party individual, not associated with any Defendant or its counsel, and approved by the Department of Justice; and any expenses associated with this training shall be borne by Defendants. The Design Defendants shall provide to the United States, 30 days before the training, the name(s), address(es) and telephone number(s) of the trainer(s); and copies of the training outlines and any materials to be distributed by the trainers. The Design Defendants shall provide to the United States, 30 days after the training, certifications executed by them and all covered employees and agents confirming their attendance, in a form substantially equivalent to Appendix G.

## X. NOTICE OF DEFENDANTS' NON-DISCRIMINATION POLICY

47.     Within ten (10) days after the date of entry of this Consent Decree, the Current Owner shall post and prominently display in the sales or rental offices of Hudson Crossing a sign – no smaller than 10 by 14 inches – indicating that all dwellings are available for rental on a nondiscriminatory basis. A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement.

48.     For the duration of this Consent Decree, in all future advertising in newspapers and electronic media, and on pamphlets, brochures and other promotional literature regarding Hudson Crossing, the Current Owner shall place, in a conspicuous location, a statement that features for persons with disabilities required by the FHA will be available in the dwelling units at Hudson Crossing. Similarly, for the duration of this Consent Decree, Dermot shall place, in a conspicuous location, a statement that the dwelling units include features for persons with

disabilities required by the FHA in any future advertising in newspapers and electronic media,

and on pamphlets, brochures and other promotional literature regarding any new Covered

Multifamily Dwelling that Dermot may develop or construct.

### XI.    NOTIFICATION AND DOCUMENT RETENTION

49.    No later than one hundred eighty (180) days after the date of entry of this Consent

Decree, the Design Defendants shall submit to the United States an initial report regarding the

signed statements of such Defendants' employees and agents who have completed the training

program specified in paragraph 46 of this Consent Decree.  Thereafter, during the term of this

Consent Decree, each Defendant shall, on or prior to the anniversary of the entry of this Consent

Decree, submit to the United States a report regarding  the signed statements of new employees

and agents that, in accordance with paragraphs 40 through 44 of this Consent Decree, they have

received and have had the opportunity to read the Consent Decree, and had an opportunity to

have questions about the Consent Decree answered, except that the last report shall be due on or

before sixty (60) days prior to the anniversary.

50.    For the duration of this Consent Decree, the Design Defendants shall advise the

United States in writing within fifteen (15) days after receipt of any written administrative or

judicial fair housing complaint regarding any Covered Multifamily Dwelling owned, managed,

and/or designed or constructed by it, or against any of its employees or agents working at or for

any such property, alleging unlawful discrimination under the FHA.  Upon reasonable notice, the

Design Defendants shall also provide the United States all non-confidential information it may

request concerning any such complaint.  The Design Defendants shall also advise counsel for the

United States, in writing, within fifteen (15) days after the resolution of any such complaint.

22

51.     For the term of this Consent Decree, the Design Defendants are required to preserve all records related to this Consent Decree for Hudson Crossing and any other Covered Multifamily Dwellings designed, constructed, owned, operated, or acquired by it during the duration of this Consent Decree.  Upon reasonable notice to the Design Defendants, representatives of the United States shall be permitted to inspect and copy any such records of the Design Defendants or inspect any developments or residential units under the Design Defendants' control bearing on compliance with this Consent Decree at any and all reasonable times, provided, however, that the United States shall endeavor to minimize any inconvenience to the Design Defendants from such inspections.

52.     In light of the Architect Defendant's bankruptcy, the Individual Architect shall implement the requirements imposed on the Architect Defendant under Paragraphs 40 to 46 and Paragraphs 49 to 51 of this Consent Decree (*i.e.*, the educational and the notification and document retention requirements) at any architecture firm with which he is associated during the terms of this Decree.

## XII. LOW-INCOME HOUSING TAX CREDIT PROGRAM COMPLIANCE

53.     Design Defendants are hereby notified that, in the event that the Defendants fail to comply with any of the terms of this Consent Decree and the United States obtains an order establishing such noncompliance, the United States may take any appropriate action, including but not limited to notifying the appropriate state housing finance agency of the violation. See 26 U.S.C. § 42(m)(1)(B)(iii).

## XIII.  RESOLUTION, DURATION OF CONSENT DECREE AND TERMINATION OF LEGAL ACTION

54.     This Consent Decree shall remain in effect for three (3) years following entry of this Consent Decree by the Court.  By consenting to entry of this Consent Decree, the parties agree that in the event that a Design Defendant engages in any future conduct occurring after entry of this Consent Decree that leads to a determination of a violation of the FHA, such conduct shall constitute a "subsequent violation" by such Design Defendant pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).

55.     The Court shall retain jurisdiction for the duration of this Consent Decree to enforce the terms of the Consent Decree.  The United States may move the Court to extend the duration of the Consent Decree in the interests of justice.  Each Defendant reserves the right to object to any such extension and to oppose any such motion.  The duration of the Consent Decree may also be extended by the mutual written agreement of the United States and the Defendants.

56.     The United States and the Defendants shall endeavor, in good faith, to resolve informally any differences regarding interpretation of and compliance with this Consent Decree prior to bringing such matters to the Court for resolution.  However, in the event of a failure by any Defendant to perform, in a timely manner, any act required by this Consent Decree or otherwise for their failure to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorney's fees which may have been occasioned by the violation or failure to perform.

57.     Upon the expiration of the Consent Decree, the Complaint in this action shall be dismissed with prejudice as to the Defendants.

## XIV. RESERVATION OF RIGHTS

58.     All obligations agreed to by the Developer Defendant, Dermot, and the Current Owner in this Consent Decree are without prejudice to their claims, rights and remedies against the Architect Defendant, any party that provided insurance to the Architect Defendant, or and/or any other person or entity, including, without limitation, claims, rights and remedies concerning negligence, malpractice, contribution, indemnity, and successor liability, all of which claims, rights and remedies are expressly reserved.  Further, all obligations agreed to by the Architect Defendant in this Consent Decree are without prejudice to any and all of the Architect Defendant's available claims, rights, remedies, and defenses against the other defendants and/or any other person or entity, including, without limitation, defenses at law, by contract, in equity, or in fact, all of which defenses are expressly reserved.

## XV.  TIME FOR PERFORMANCE

59.     Any time limits for performance imposed by this Consent Decree may be extended by the mutual written agreement of the United States and the relevant Defendants.

## XVI.  COSTS OF LITIGATION

60.     Each party to this litigation will bear its own costs and attorney's fees associated

with this litigation.

The undersigned apply for and consent to the entry of this Consent Decree:

*For the United States:*

Dated:    New York, New York
          May 2\] 2012


          PREET BHARARA
          United States Attorney

By: _____
          LI YU
          CARINA H. SCHOENBERGER
          EMILY E. DAUGHTRY
          Assistant United States Attorneys
          86 Chambers Street, 3rd Floor
          New York, New York 10007
          Tel. Nos. (212) 637-2734, 2822, 2777
          Fax. Nos. (212) 637-2717, 2702
          Li.Yu@usdoj.gov
          Carina.Schoenberger@usdoj.gov
          Emily.Daughtry@usdoj.gov

*For  Developer Defendant and Dermot:*

Dated:    Washington, D.C.
          May 23 2012


          CORREIA & ASSOCIATES, P.C.

By: _____
          EDWARD CORREIA
          1101 30th St., N.W., Suite 500
          Washington, D.C. 20007
          Tel. No. (202) 380-3595
          Ecorreia@correiadc.com

_____
          STEPHEN N. BENJAMIN
          Chief Operating Officer
          The Dermot Company

26

*For EQR-Hudson Crossing LLC :*

Dated:   Chicago, Illinois
         May 22, 2012

By: _____

JAMES D. FIFFER
Authorized Agent
2 N. Riverside Plaza, Suite 400
Chicago, IL 60606
Tel. (312) 928-1194
Jfiffer@eqrworld.com

*For H. Thomas O'Hara Architects:*

Dated:   New York, New York
         May __, 2012

GOGICK, BYRNE & O'NEILL, LLP

By: _____

KEVIN J. O'NEILL
11 Broadway, Suite 1560
New York, NY  10004
Tel. No. (212) 422-9424
Kjo@gogick.com

_____

H. THOMAS O'HARA

CHAPTER 7 TRUSTEE

By: _____

ALAN NISSELSON
WINDELS MARX LANE & MITTENDORF
156 West 56th Street
New York, NY  10019
Tel. No. (212) 237-1021
Alan Nisselson
Anisselson@windelsmarx.com

SO ORDERED:

_____
UNITED STATES DISTRICT JUDGE

Dated: _____

27

*For EQR-Hudson Crossing LLC :*

Dated:   Chicago, Illinois
        May __, 2012


By: _____
     JAMES D. FIFFER
     Authorized Agent
     2 N. Riverside Plaza, Suite 400
     Chicago, IL 60606
     Tel. (312) 928-1194
     Jfiffer@eqrworld.com

*For H. Thomas O'Hara Architects:*

Dated:   New York, New York
        May __, 2012

     GOGICK, BYRNE & O'NEILL, LLP

By: _____
     KEVIN J. O'NEILL
     11 Broadway, Suite 1560
     New York, NY 10004
     Tel. No. (212) 422-9424
     Kjo@gogick.com


     H. THOMAS O'HARA


     CHAPTER 7 TRUSTEE

By: _____
     ALAN NISSELSON
     WINDELS MARX LANE & MITTENDORF
     156 West 56th Street
     New York, NY 10019
     Tel. No. (212) 237-1021
     Alan Nisselson
     Anisselson@windelsmarx.com


SO ORDERED:


UNITED STATES DISTRICT JUDGE

Dated:  May 25, 2012

27

# APPENDIX A
## PUBLIC AND COMMON USE AREAS

As soon as reasonably possible, but no later than six (6) months from the entry of this Consent Decree, Dermot, with cooperation of the Current Owners, shall finish the retrofits listed in this Appendix A.

### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 2

#### BUILDING MAIN ENTRANCE AND LOBBY

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance door | Opening force is 11 lbs. | Will decrease opening force to no more than 8.5 lbs |
| Rent drop box | Drop slot is 60″ above the finished floor ("AFF") | Will lower the drop slot to 48″ AFF |
| Mail boxes | Top two rows are, respectively, 58¾″ and 51¾″ AFF | *Will lower mailboxes to max 48″ AFF; alternatively, will provide mail pick-up and drop-off service by building staff for any disabled resident who is assigned a mailbox in the top two rows.* |

#### UNISEX TOILET ROOM IN THE LOBBY

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Sign | Lacks raised letters or Braille | Will modify to provide raised letters and Braille |
| Entrance door | Threshold is ¾″ high without compliant | Will make threshold 1/2″ high max, and |

|  | bevel | beveled at 1:2. |
|---|---|---|
| Toilet space dispenser | 36″ to 42″ from rear wall | Will move to 36″ max from rear wall |
| Rear wall | Lacks grab bar | Will install 36″ grab bar |
| Side wall | Lacks grab bar | Will install 42″ grab bar |
| Lavatory location | Centerline is 11¼″ from side wall | *Will move to 15″ from side wall* |
| Lavatory faucet controls | Require twisting | *Will replace with controls that do not require twisting or tight grasping or tight pinching* |
| Lavatory pipes | Lacks insulation | Will install insulation |
| Mirror | 52 3/8″ AFF | Will move bottom edge to 40″ AFF max |
| Paper towel dispenser | 57″ AFF | Will move to 54″ AFF max |
| Toilet location | Toilet centerline is 22″ from the side wall | Will modify to provide 18″ centerline from the side wall |
| Toilet seat | 15½″ AFF | Will raise to 17″ to 19″ AFF |
| Toilet flush | Located on narrow side of the toilet | Will mount on wide side of the toilet |

**LEASING OFFICE**

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Sign | Lacks raised letters or Braille and mounted 66″ AFF | Will modify to provide raised letters and Braille and lower to 60″ AFF |
| Entrance door (left) | Opening force is 10 lbs. | Will decrease opening force to no more than 8.5 lbs |
| Entrance door (right) | Closing speed less than 3 seconds | Will adjust to provide 3 seconds to close |

2

|  |  | from 70 degrees to 3″ from latching |
| --- | --- | --- |
| Entrance door unlock button | 54½″ AFF | Will lower to 48″ for forward approach |

### UNISEX TOILET ROOM FOR THE LEASING OFFICE

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
| --- | --- | --- |
| Entrance door | Knob hardware | Will install lever hardware |
| Toilet location | Toilet centerline is 17½″ from the side wall | Will modify to provide 18″ centerline from the side wall |
| Entrance door | Threshold is ¾″ high without compliant bevel | Will make threshold 1/2″ high max, and beveled at 1:2. |
| Toilet space dispenser | 37″ to 43″ from rear wall | Will move to 36″ max from rear wall |
| Rear wall | Lacks grab bar | Will install 36″ grab bar |
| Side wall | Grab bar extends 48″ from rear wall | Will move to 54″ minimum from rear wall |
| Lavatory faucet controls | Self-closing in 5 seconds | Will modify to remain open for 10 seconds minimum |
| Lavatory pipes | Lacks insulation | Will install insulation |
| Mirror | 50¼″ AFF | Will move bottom edge to 40″ AFF max |
| Paper towel dispenser | 59″ AFF | Will move to 54″ AFF max |

### KITCHENETTE FOR LEASING OFFICE

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
| --- | --- | --- |
| Sink | Only 16½″ knee space AFF at 8″ in from the front of the sink, and only 8½″ AFF toe | Will modify to provide (i) 27″ knee space AFF minimum at 8″ from the front and (ii) |

3

| | space | 9″ toe space minimum AFF |
|---|---|---|
| Lavatory faucet controls | Require twisting | Will install lever hardware |
| Microwave oven | 53¼″ AFF to bottom | Will lower to 54″ AFF to highest location to operate oven |

## ELEVATORS

| **ELEMENT** | **CONDITION** | **AGREED UPON RETROFIT** |
|---|---|---|
| Doors | Re-opening devices only remain in effect for 12 seconds to 15 seconds | Will modify re-opening devices to remain in effect for 20 seconds minimum |
| Up/down arrow lights on doors | Not illuminated | Will add illumination |

## LAUNDRY ROOM

| **ELEMENT** | **CONDITION** | **AGREED UPON RETROFIT** |
|---|---|---|
| Sign | Lacks raised letters or Braille | Will modify to provide raised letters and Braille |
| Entrance door (left) | Opening force is 8 lbs | Will decrease opening force to no more than 5 lbs |
| Entrance door (right) | Opening force is 11 lbs | Will decrease opening force to no more than 5 lbs |
| Location of washing machines | Curb 11″ high and 6½″ deep obstructs clear floor space for forward or parallel approach | *Will install two (2) front-loaded washing machines and place them flush with front of the curb.* |

### FITNESS ROOM

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance door | Threshold is 3/8″ high and not beveled | Will bevel at 1:2 above ¼″ |
| DVD player shelves | Protrude 12″ at 64 3/8″ | Will adjust to protrude 4″ max |

### ROOFDECK (HUDSON TERRACE)

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Exterior door | Opening force is 9 lbs. | Will decrease opening force to no more than 8.5 lbs. |
| Key fob (hallway side) | 53½″ AFF | Will lower to 48″ AFF for forward approach.″ |
| Exit button (roof deck side) | 55¼″ AFF | Will either (i) lower to 54″ AFF and move plant to permit side approach, or (ii) lower to 48″ AFF for forward approach. |

### TRASH CHUTE ROOMS

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Chute access doors – hardware | Requires twisting to open | Will replace with hardware that does not require twisting or tight grasping or tight pinching |
| Chute access doors – opening force | Requires 10 lbs to 13 lbs in opening force | Will reduce opening force to 5 lbs max |

| Insufficient turning space | 53½″ deep and 51″ wide | *Will provide alternative trash pick-up by building staff for any disabled resident or guests, according to the following procedure:  The disabled individual will notify the concierge desk, at any time between 7 a.m. and 7 p.m. daily, that trash pick-up is needed, and the concierge will arrange for a porter to be dispatched to the apartment promptly.  Residents will be notified of this procedure in writing, and notices of this procedure will be posted on Hudson Crossing's bulletin boards.* |
| --- | --- | --- |

**APPENDIX B**

**INDIVIDUAL UNIT RETROFITS**

As soon as reasonably possible, but no later than the earlier of (a) vacancy of the unit in which the retrofit is required, or (b) six (6) months after the entry of this Consent Decree, Dermot, with the cooperation of the Current Owners, shall cause the retrofits listed in this Appendix B to be completed, except that those retrofits listed on this Appendix B that are to be performed "on request" shall be completed no later than forty-five (45) days after request by the tenant or a prospective tenant (subject to *force majeure*).

**CLEAR OPENING WIDTH OF DOORS**

**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 3, SEC (2)**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 5T, 6W, 7R, 11M, and 12N | Clear opening width for door to sub-divided bedroom less than 31 5/8″ | Will replace doors to provide 31 5/8″ minimum clear opening width. |
| All units | Clear opening width for doors only 31″ | At the request of a tenant or a prospective tenant, will install swing-clear offset door hinges to provide 31 5/8″ minimum clear opening width. |

**CLEAR OPENING WIDTH OF CLOSETS**

**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 3, SEC (2)**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 14P | Clear opening width for bi-fold door to walk-in closet less than 31 5/8″ | Will replace door to provide 31 5/8″ minimum clear opening width. |

**KITCHEN ENTRY**
**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 4, SEC. (1)**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 15P | Hallway to kitchen is only 34¼″ wide | Will widen hallway to at least 36″ |
| 14R and 15R | Entrance to kitchen is only 30″ wide | Will replace refrigerators with low-profile versions to widen the entries to kitchens to at least 32″ |

**THRESHOLD TO WALK-IN CLOSETS**
**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 4, SEC. (4)**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 11U–15U, 3X–10X, 11W–15W, 4Z–10Z | Thresholds for walk-in closets are ½″high and not beveled | Will make thresholds beveled at 1:2 above ¼″ |

**TERRACE THRESHOLD**
**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 4, SEC. (4)**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 3rd- and 11th-floor units | Level change at terrace door exceeds ¾″ | At the request of a tenant or a prospective tenant who has signed a lease, will install a lift that is compliant with the Fair Housing Act Guidelines. |

**KITCHEN OUTLETS**

**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 5**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 4A–15A, 3F–15F, 3G–15G, 3H–15H, 3J–15J, 3M–10M, 12M, 3N–10N, 4U–10U, 4V–10V, 4W–10W, and 4Z–10Z | Kitchen outlets less than 12″ from side wall or appliance measured to the centerline of the outlets | Will install power strips to provide outlets less than 12″ from side wall or appliance |
| 14N and 15N | Kitchen outlets less than 36″ from corner measured to the centerline of the outlets | Will install power strips to provide outlets at least 36″ from the corner. |
| 3D–15D, 3E–15E, 11M, 14M–15M, 11P–12P, 3R–12R, 11S–12S, 3T–10T, 11V–15V, 3W–15W, 3Y–10Y, and 3Z–10Z | Kitchen outlets more than 12″ reach from front edge of countertop measured to the centerline of the outlets | Will install power strips to provide outlets at most 12″ reach from front edge of countertop |

**OBSTRUCTION OF GRAB BAR LOCATION**

**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 6**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Common issue to all units | Banjo counter-top at lavatory obstructs grab bar location | If requested by a disabled tenant, will remove the banjo counter-top and install a grab bar above the toilet |

**KITCHEN REFRIGERATORS**

**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (1)(a)**

| *UNIT(S)* | *CONDITION* | *AGREED UPON RETROFIT* |
|---|---|---|
| 14P | Refrigerator centerline less than 24″ to side | Will cut back adjacent wall, and position refrigerator flush with the kitchen entry, to |

3

| | wall for a centered side approach. | increase centerline from side wall. |
|---|---|---|

### KITCHEN RANGES PROVIDE INSUFFICIENT CLEARANCE
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (1)(a)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 14R –15R | Range centerline less than 24″ to side wall for a centered side approach. | Will cut back side wall to create 24″ clearance between centerline of range and the side wall. |
| 3E–15E | Range centerline less than 24″ to side wall for a centered side approach. | Will position range to be flush with the adjacent wall to create 24″ clearance between centerline of range and the wall. |
| All units except for 3E–15E, 3K–15K, 14N–15N, 14R–15R, and 3X–10X | Range centerline less than 24″ to side wall for a centered side approach. | If requested by a disabled tenant or a disabled prospective tenant, will provide a 30″ x 48″ clear floor space centered on the range for a side approach. |

### KITCHEN CLEARANCE
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (1)(b)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 14M–15M and 14R–15R | Less than 40″ minimum width at range or dish-washer | Will move or replace range or dish-washer to provide 40″ minimum width. |
| 11V–15V, 11T–15T, and 3Z | Less than 40″ minimum width at refrigerator. | Will install a low-profile refrigerator at the request of a tenant or a prospective tenant, upon vacancy of the unit, or within the term of the Consent Decree, whichever is the earliest. |

4

| All units except 3D–15D, 3E–15E, 14M–15M, 14N–15N, 11P–12P, 14R–15R, 11U–15U, 11V–15V, 11T–15T, and 3Z | Less than 40″ minimum width at refrigerator. | Will install a low-profile refrigerator at the request of a tenant or prospective tenant. |

## BATHROOM CLEARANCE
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC (2)(a)(i)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| All units except for 3K–15K and 4V–10V | Clear floor space beyond in-swinging door less than 30″ wide by 48″ long | Bathroom door swings will be reversed at the request of a tenant or prospective tenant. |

## BATHROOM TOILETS
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (2)(a)(ii)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 14P and 11U–15U | Toilet centerline less than 18″ from side wall. | Will install offset flange to move toilet to between 16″ and 18″ from side wall |
| 3F–15F, 3G–15G, 3H–15H, 3J–15J, 11W–15W, and 4Z–10Z | Toilet centerline less than 18″ from side wall. | At the request of a tenant or a prospective tenant, will install offset flange to move toilet away from side wall. |
| Common issue for all units | Clearance between the side wall and the lavatory base cabinet less than 33″ | At the request of a tenant or a prospective tenant, will either move the base cabinet or install a pedestal sink to create at least 33″ clearance between the side wall and the lavatory base cabinet. |

**BATHROOM LAVATORIES**

**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (2)(a)(ii)**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| All units | Lavatory centerline is less than 24″ minimum from bathtub, and base cabinets are non-removable. | At the request of a tenant or a prospective tenant, will install removable base cabinet with finished wall, finished floor surfaces, and covered pipes below the lavatory. |

6

**APPENDIX C**

**NOTICE OF RETROFITS TO PUBLIC AND COMMON USE AREAS
OF HUDSON CROSSING**

To Our Residents and Prospective Residents:

Federal law requires that the public and common use areas at Hudson Crossing contain accessibility features for persons with disabilities. Within the next six months, we will be undertaking a program of retrofits to the public and common use areas to make them more accessible to persons with disabilities. A list of mandatory retrofits we will be undertaking is available at the leasing office. We do not anticipate that current residents will have to be relocated during the term of their tenancy or that prospective residents will have their move-in dates delayed because of the retrofits we will be undertaking.

Should you have questions regarding this letter, please contact the leasing office at Hudson Crossing or the United States Attorney's Office, Southern District of New York, at (212) 637-0840.

Sincerely,
Hudson Crossing

**APPENDIX D-1**

## NOTICE TO RESIDENTS OR PROSPECTIVE RESIDENTS
## OF RETROFITS FOR THE HUDSON CROSSING APARTMENTS,
## WHICH MUST BE SCHEDULED WITHIN THE NEXT SIX MONTHS

Hudson Crossing is dedicated to the principle of equal housing opportunity. The federal Fair Housing Act requires that apartments in newer apartment communities have certain features of physical accessibility for people with disabilities.

This is to advise you that, as a result of a settlement in a case brought by the United States against the developers and designers of this apartment complex, we have agreed to modify, by varying degrees, the apartments at Hudson Crossing to provide greater accessibility for people with disabilities. Your unit or prospective unit is one of those that will be modified to ensure compliance with the federal Fair Housing Act. These modifications will be made at no cost to you.

Any scheduling of the modifications will take into account your preferences and convenience. The actual work will take no more than five days and, should you have to move out temporarily, we will pay reasonable relocation and housing expenses while the modifications are being made at the applicable federal government per diem rate (as available at www.gsa.gov – click on "per diem rates" under Travel).

Depending on the particular features in your unit, the modifications may include:

- Modifications of door entries and thresholds to ensure accessibility to persons with disabilities;

- Modification of bathrooms and kitchens to ensure accessibility to persons in disabilities;

- Modification of kitchen appliances to ensure usability by persons with disabilities;

- Reversal of bathroom door swings; or

- Modification of electrical outlets.

While you do not have to request the modifications now, you should be aware that some of this work must be completed **within the next six months**, regardless of your intention to stay in the apartment for a longer time. A representative will be contacting you soon to review these modifications and to discuss a time frame within which these modifications may be made.

If you have any questions, please contact us at the management office.

**APPENDIX D-2**

**NOTICE TO RESIDENTS OR PROSPECTIVE RESIDENTS
OF AVAILABLE RETROFITS FOR THE HUDSON CROSSING APARTMENTS**

Hudson Crossing is dedicated to the principle of equal housing opportunity.  The federal Fair Housing Act requires that apartments in newer apartment communities have certain features of physical accessibility for people with disabilities.

This is to advise you that, as a result of a settlement in a case brought by the United States against the developers and designers of this apartment complex, we have agreed to modify, by varying degrees, the apartments at Hudson Crossing to provide greater accessibility for people with disabilities.  Your unit or prospective unit is one of those that does not meet the accessibility requirements of the Fair Housing Act.  We want you to know that you may request to have your apartment, or prospective apartment, modified now at no cost to you.  The actual work will take no more than five days and, should you have to move out temporarily, we will pay reasonable relocation and housing expenses at the applicable federal government per diem rate while the modifications are being made rate (as available at www.gsa.gov – click on "per diem rates" under Travel)..

Depending on the particular features in your unit, the modifications may include:

- Widening of doorways to bedrooms, bathrooms, and terraces;

- Removal of banjo countertops in bathrooms;

- Modification of kitchen appliances to ensure usability by persons with disabilities;

- Reversal of bathroom door swings; or

- Modification of terraces to ensure accessibility to persons who use wheelchairs.

If you have any questions, please contact us at the management office.

## APPENDIX E

### NOTICE TO POTENTIAL AGGRIEVED PERSONS

On ___, 2012, the United States District Court for the Southern District of New York entered a consent decree resolving a lawsuit brought by the United States Department of Justice against certain builders and developers alleging that they failed to include certain accessible features for persons with disabilities required by the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(c), in the design and construction of Hudson Crossing.

Under this consent order, a person may be entitled to receive monetary relief if he or she:

- WAS DISCOURAGED FROM LIVING AT THIS PROPERTY BECAUSE OF THE LACK OF ACCESSIBLE FEATURES;

- HAS BEEN HURT IN ANY WAY BY THE LACK OF ACCESSIBLE FEATURES AT ANY OF THESE PROPERTIES;

- PAID TO HAVE AN APARTMENT AT THESE PROPERTIES MADE MORE ACCESSIBLE TO PERSONS WITH DISABILITIES; OR

- WAS OTHERWISE DISCRIMINATED AGAINST ON THE BASIS OF DISABILITY AT ANY OF THESE PROPERTIES.

If you wish to make a claim for discrimination on the basis of disability, or if you have any information about persons who may have such a claim, please contact the United States Attorney's Office, Southern District of New York at 212-637-2800. You may also fax us at 212-637-2702 or write to:

United States Attorney's Office, Southern District of New York
Attn: Civil Rights Unit
86 Chambers Street
New York, New York 10007

NOTE: You must call or write no later than _____, 201__.

**APPENDIX F**

**ACKNOWLEDGMENT OF RECEIPT OF CONSENT ORDER**

     I _____, am an employee of _____ at Hudson Crossing and my duties include _____. I have received and read a copy of the Consent Decree in *United States of America v. 475 Ninth Avenue Associates, et al.*, 12 Civ. _____ (\_\_\_) (S.D.N.Y.), and have been given instruction on (1) the terms of this Consent Decree, (2) the requirements of the Fair Housing Act, particularly related to the Act's design and construction requirements, and (3) my responsibilities and obligations under the Consent Decree and the Fair Housing Act.

_____, 20\_\_\_\_

 

                        _____

                        Employee Signature

**APPENDIX G**

**CERTIFICATION OF FAIR HOUSING TRAINING**

On _____, I attended training on the federal Fair Housing Act, including its requirements concerning physical accessibility for persons with disabilities. I was also instructed as to the rental policies and procedures, including the nondiscrimination, complaint, and reasonable accommodation policies of the Fair Housing Act. I have had all of my question concerning the Fair Housing Act answered to my satisfaction.


_____
Employee Signature


_____
Print Name


_____
Date

**APPENDIX H**

**RELEASE FORM**

In consideration of the payment of the sum of _____ dollars ($_____), pursuant to the Consent Decree entered in *United States of America v. 475 Ninth Avenue Associates, et al.*, 12 Civ. _____ (___) (S.D.N.Y.), I hereby release the defendants named in this action from any and all liability for any claims, legal or equitable, I may have against them arising out of the issues alleged in the above-styled action.

I fully acknowledge and agree that this release of the defendants shall be binding on my heirs, representatives, executors, successors, administrators, and assigns.

I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.

_____
(Signature)

_____
(Print name)

_____
(Date)